1
2
3
4
5
6
7
8            UNITED STATES DISTRICT COURT

9            EASTERN DISTRICT OF CALIFORNIA

10

11   MONTE WEATHERINGTON,                    1:14-cv-00906-AWI-GSA-PC

12            Plaintiff,                     **SCREENING ORDER**

13        vs.                                **ORDER DISMISSING SECOND AMENDED
                                             COMPLAINT FOR FAILURE TO STATE A
14   S. RIOS, et al.,                        CLAIM, WITH LEAVE TO AMEND**

15            Defendants.                    **THIRTY-DAY DEADLINE FOR
                                             PLAINTIFF TO FILE A THIRD AMENDED
16                                           COMPLAINT**

17                                           **ORDER FOR CLERK TO SEND
                                             PLAINTIFF A CIVIL COMPLAINT FORM**
18
19
20
21

22   **I.       BACKGROUND**

23        Monte Weatherington ("Plaintiff") is a state prisoner proceeding pro se with this civil

24   rights action pursuant to 42 U.S.C. § 1983.  Plaintiff filed the Complaint commencing this

25   action on June 12, 2014.  (ECF No. 1.)  The court screened the Complaint under 28 U.S.C. §

26   1915A and issued an order on March 16, 2015, requiring Plaintiff to file an amended complaint

27   or proceed with the cognizable Fourth Amendment claim found by the court.  (ECF No. 7.)  On

28   June 1, 2015, Plaintiff filed the First Amended Complaint.  (ECF No. 13.)  On April 27, 2016,

the court dismissed the First Amended Complaint for failure to state a claim, with leave to amend.  (ECF No. 16.)   On June 16, 2016, Plaintiff filed the Second Amended Complaint, which is now before the court for screening.  (ECF No. 18.)

## II.    SCREENING REQUIREMENT

The court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity.  28 U.S.C. § 1915A(a). The court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief.   28 U.S.C. § 1915A(b)(1),(2).  "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that the action or appeal fails to state a claim upon which relief may be granted."  28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint is required to contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)).   While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences."  Doe I v. Wal-Mart Stores, Inc., 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted). To state a viable claim, Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Iqbal, 556 U.S. at 678-79; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009).   While factual allegations are accepted as true, legal conclusions are not.  Id.  The mere possibility of misconduct falls short of meeting this plausibility standard.  Id.

## III.    SUMMARY OF ALLEGATIONS IN SECOND AMENDED COMPLAINT

Plaintiff is presently incarcerated at the California Men's Colony-East in San Luis Obispo, California.  The events at issue in the Second Amended Complaint allegedly occurred at Pleasant Valley State Prison (PVSP) in Coalinga, California, when Plaintiff was incarcerated

there.[1]   Plaintiff names as defendants Correctional Officers (C/O) S. Rios and Arranquin ("Defendants").   Plaintiff brings claims under the First, Fourth, Eighth, and Fourteenth Amendments for retaliation, improper strip searches, excessive force, and violation of due process.   Plaintiff brings a substantive due process claim, characterizing the violations against him as "shocking to the conscience."   Second Amended Complaint (2ACP) at 8.   Plaintiff also brings a claim for procedural due process.   Plaintiff states that he has more evidence which the court asked him not to include in the complaint.

Plaintiff alleges as follows.   Defendant C/O Rios, a male officer, singled Plaintiff out, made embarrassing comments about him to other officers, took Plaintiff out of view of other officers, and performed multiple strip searches when he and Plaintiff were alone.   Often, Rios would have Plaintiff wait until last to be called for a search, so that no others would be present, causing Plaintiff extreme anxiety.   When other inmates were present, Rios would make comments like, "You got to watch this one," and in prison such comments can lead to violence. 2ACP at 7.

Defendant C/O Arranquin, a female officer, observed strip searches of Plaintiff and other male inmates by monitor, and viewed inmates on the monitor when they went to the bathroom.   She particularly gawked at black inmates, as seen by other blacks when they observed her from the visiting room.   Plaintiff contends that defendants C/O Arranquin and C/O Rios worked together, and C/O Rios condoned C/O Arranquin's actions and encouraged her to particularly watch Plaintiff.

Plaintiff was called out for an unreasonable search while he was with his wife in the visiting room.   Plaintiff and his wife were in line near the officer's desk, waiting to take a photograph.   C/O Arranquin told Plaintiff, "Don't do it."   2ACP at 3.   Plaintiff said, "Don't do what?" and then realized that Arranquin thought he was going to speak to an inmate behind the

---

[1] In the Second Amended Complaint, Plaintiff does not indicate when or where the events at issue took place.  In the original Complaint, Plaintiff alleges that the events at issue took place at PVSP, when he was incarcerated there.  (ECF No. 1 at 5 ¶3.)  However, none of Plaintiff's complaints indicate when the events took place.  Plaintiff shall be required to include information about when and where the events took place in his Third Amended Complaint.

glass.  2ACP at 3-4.  C/O Rios called out to Plaintiff to search him, and when Plaintiff asked what it was about, C/O Rios said, "It's for fucking with my partner."  2ACP at 4.  C/O Rios pulled Plaintiff out of the visiting room to humiliate him in front of other inmates, and exposed Plaintiff's genitals during the search to the female officer on the monitor.  There was no penological purpose for the search; it was only to get revenge against Plaintiff for prior grievances that Plaintiff had filed against C/O Rios.  Plaintiff alleges that C/O Rios performed an excessive number of searches on Plaintiff on dates coinciding with Plaintiff's filing of grievances.

Five officers were called away from the yard to strip search Plaintiff, placing the institution at risk because they were not able to immediately respond to an alarm in the medical clinic.  This was part of Officer Rios' acts against Plaintiff for filing grievances against him.

Officer Rios also fondled Plaintiff's genitals during a pat down search, to show Rios' intention to exert power and control over Plaintiff.  Rios also retaliated against him by having him transferred to another yard.  Plaintiff advises the court that a review of his 602 grievances will show the dates, times, and nature of defendants Rios and Arranquin's actions.[2]

Plaintiff has not included a request for relief in the Second Amended Complaint.

## IV.   PLAINTIFF'S CLAIMS

The Civil Rights Act under which this action was filed provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983

"[Section] 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'"  Graham v. Connor, 490 U.S. 386, 393-94 (1989) (quoting Baker v. McCollan, 443 U.S. 137, 144 n.3 (1979)); see also Chapman

---

[2] However, Plaintiff did not submit any 602 grievances with the Second Amended Complaint for the court's review.

4

v. Houston Welfare Rights Org., 441 U.S. 600, 618 (1979); Hall v. City of Los Angeles, 697 F.3d 1059, 1068 (9th Cir. 2012); Crowley v. Nevada, 678 F.3d 730, 734 (9th Cir. 2012); Anderson v. Warner, 451 F.3d 1063, 1067 (9th Cir. 2006).  "To the extent that the violation of a state law amounts to the deprivation of a state-created interest that reaches beyond that guaranteed by the federal Constitution, Section 1983 offers no redress."  Id.

To state a claim under § 1983, a plaintiff must allege that (1) the defendant acted under color of state law and (2) the defendant deprived him or her of rights secured by the Constitution or federal law.  Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006); see also Marsh v. Cnty. of San Diego, 680 F.3d 1148, 1158 (9th Cir. 2012) (discussing "under color of state law").  A person deprives another of a constitutional right, "within the meaning of § 1983, 'if he does an affirmative act, participates in another's affirmative act, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made.'"  Preschooler II v. Clark Cnty. Sch. Bd. of Trs., 479 F.3d 1175, 1183 (9th Cir. 2007) (quoting Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978)).  "The requisite causal connection may be established when an official sets in motion a 'series of acts by others which the actor knows or reasonably should know would cause others to inflict' constitutional harms."  Preschooler II, 479 F.3d at 1183 (quoting Johnson, 588 F.2d at 743).  This standard of causation "closely resembles the standard 'foreseeability' formulation of proximate cause."  Arnold v. Int'l Bus. Mach. Corp., 637 F.2d 1350, 1355 (9th Cir. 1981); see also Harper v. City of Los Angeles, 533 F.3d 1010, 1026 (9th Cir. 2008).

### A.    Deficiencies in Second Amended Complaint

Plaintiff shall be required to file a Third Amended Complaint because of procedural deficiencies in the Second Amended Complaint.  First, the Second Amended Complaint does not include a request for relief.  Rule 8(a) of the Federal Rules of Civil Procedure requires that "[a] pleading that states a claim for relief must contain . . . a demand for the relief sought, which may include relief in the alternative or different types of relief."  Plaintiff's Third Amended Complaint must contain a request for the relief sought.

Second, the Second Amended Complaint is not signed under penalty of perjury.[3]   This court's form complaint includes a signature line for the plaintiff to sign under penalty of perjury.  Plaintiff shall be required to use the court's form complaint for his Third Amended Complaint.

Third, the Second Amended Complaint does not indicate when or where the events at issue took place.  This basic information is necessary for the court to determine venue and when the claims accrued.  Plaintiff must provide this information in the Third Amended Complaint.

Due to these deficiencies, Plaintiff's Second Amended Complaint shall be dismissed for failure to state a claim, with leave to amend.  Notwithstanding this dismissal for procedural deficiencies, the court shall proceed to screen the Second Amended Complaint and provide Plaintiff with guidance as to his claims.

**B.      Plaintiff's Statement That the Court Asked Him Not to Include Evidence**

Plaintiff states in the Second Amended Complaint that he "has evidence in furtherance of this case which this court has asked they not be included in the complaint."  (2ACP at 8.) The court finds no evidence on the record that the court asked Plaintiff not to include any evidence in the complaint.  The court cannot address Plaintiff's assertion without more information.

**C.      Eighth Amendment Excessive Force**

"What is necessary to show sufficient harm for purposes of the Cruel and Unusual Punishments Clause [of the Eighth Amendment] depends upon the claim at issue . . . ." Hudson v. McMillian, 503 U.S. 1, 8 (1992).   "The objective component of an Eighth Amendment claim is . . . contextual and responsive to contemporary standards of decency."   Id. (internal quotation marks and citations omitted).   The malicious and sadistic use of force to cause harm always violates contemporary standards of decency, regardless of whether or not

---

[3]A verified complaint may be treated as an affidavit to the extent that the complaint is based on personal knowledge and sets forth facts admissible in evidence and to which the affiant is competent to testify. Lew v. Kona Hosp., 754 F.2d 1420, 1423 (9th Cir. 1985) (citing  Runnels v. Rosendale, 499 F.2d 733, 734 n. 1 (9th Cir.1974)); see Thalheimer v. City of San Diego, 645 F.3d 1109, 1116 (9th Cir. 2011).

significant injury is evident.  Id. at 9; see also Oliver v. Keller, 289 F.3d 623, 628 (9th Cir. 2002) (Eighth Amendment excessive force standard examines *de minimis* uses of force, not *de minimis* injuries)).  However, not "every malevolent touch by a prison guard gives rise to a federal cause of action."  Id. at 9.  "The Eighth Amendment's prohibition of cruel and unusual punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind.'"  Id. at 9-10 (internal quotations marks and citations omitted).

"[W]henever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."  Id. at 7.  "In determining whether the use of force was wanton and unnecessary, it may also be proper to evaluate the need for application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response."  Id. (internal quotation marks and citations omitted).  "The absence of serious injury is . . . relevant to the Eighth Amendment inquiry, but does not end it."  Id.

Plaintiff alleges an Eighth Amendment claim against defendant C/O Rios for use of excessive force during a pat down search.  The court finds no facts in the Second Amended Complaint which support a claim that defendant Rios used excessive physical force against him during the course of a search. Therefore, Plaintiff fails to state a cognizable Eighth Amendment claim against defendant Rios.

### D.      Fourth Amendment Claims

The Fourth Amendment guarantees the right of the people to be secure against unreasonable searches, and its protections extend to incarcerated prisoners.  Bell v. Wolfish, 441 U.S. 520, 545 (1979).  In determining the reasonableness of a search under the Fourth Amendment, "[c]ourts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted."  Id. at 559.  The reasonableness of a prisoner search is determined by reference to the prison context.

Michenfelder v. Sumner, 860 F.2d 328, 332 (9th Cir.1988). "When a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." Turner v. Safley, 482 U.S. 78, 79, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987). The Supreme Court found reasonable "'[v]isual body cavity searches conducted after contact visits as a means of preventing prisoners' possession of weapons and contraband, even absent probable cause.'" Id., 111 F.3d at 700 (quoting Michenfelder, 860 F.2d at 332). In Thompson v. Souza, 111 F.3d 694, 700 (9th Cir. 1997), the Ninth Circuit held that visual strip searches and urine tests to search for drugs were reasonably related to the prison officials' legitimate penological interest in keeping drugs out of prison. However, "not all strip search procedures will be reasonable; some could be excessive, vindictive, harassing, or unrelated to any legitimate penological interest." Id. The prisoner bears the burden of showing that prison officials intentionally used exaggerated or excessive means to enforce security in conducting a search. Id.

Here, Plaintiff alleges that defendant Rios conducted an excessive number of strip searches on him, some of them when Plaintiff and Rios were alone. Plaintiff also alleges that Rios fondled Plaintiff's genitals during a pat down search "in a malicious and sadistic way." 2ACP at 5. Plaintiff may be able to state a claim for violation of his Fourth Amendment rights against defendant Rios for excessive strip searches and fondling of his genitals. Thus, these claims are not appropriate for dismissal at the Rule 12(b)(6) stage. Hedrick v. McDaniel, 466 F.3d 676, 694 (9th Cir. 2006). "The watchword of the Fourth Amendment in every context is reasonableness." Id. "The 'reasonableness' of a search or seizure is a fact-intensive inquiry that cannot be determined at this stage." Id. (quoting Thompson v. Souza, 111 F.3d 694, (9th Cir. 1997) (evaluating the reasonableness of a strip search based on the manner and scope of the search, the place, and the justification)). "It is impossible to make such a fact-specific determination when the precise circumstances of the searches . . . are not before the court and when the Defendants have not yet had a chance to explain their justification for the alleged searches . . ." Id.

///

However, Plaintiff fails to state a claim for being pulled out of a contact visit with his wife by defendant Rios to conduct a strip search. He claims there was no justification for the search. Based on the facts alleged in the Second Amended Complaint, Plaintiff fails to present a cognizable Fourth Amendment claim, without more, against defendant Rios for this strip search. It is clear that prison officials have a legitimate penological interest in conducting a strip search during or after a contact visit with someone from outside the prison. Such searches are essential to the safety of the institution and inmates. Courts have long recognized that contact visits result in challenges to institutional security and safety, and the unsupported assertion that searches conducted in the context of visitation lack legitimate penological justification is untenable. See Block v. Rutherford, 468 U.S. 576, 586, 104 S.Ct. 3227 (1984) (contact visits invite a host of security problems by opening the institution to the introduction of drugs, weapons, or other contraband); Bell, 441 U.S. at 558-59 (recognizing that smuggling of money, drugs, weapons, and other contraband is "all too common an occurrence").

Plaintiff also fails to state a Fourth Amendment claim against defendants Rios and Arranquin for routinely watching Plaintiff and other inmates on a monitor during strip searches or while the inmates used the bathroom. The facts as set forth in the Second Amended Complaint are insufficient to establish a cognizable Fourth Amendment claim, even if defendant Arranquin was seen gawking at black inmates.[4] The mere fact that Plaintiff and other inmates could be viewed while in the bathroom does not present a Fourth Amendment violation. See Grummett v. Rushen, 779 F.2d 491, 495 (9th Cir. 1985) (guards' surveillance of the inmates in their cells, in the showers, and from the play yard did not violate the Fourth Amendment). The fact that C/O Arranquin was of the opposite sex does not alter the court's finding. See Johnson v. Phelan, 69 F.3d 144, 146–47 (7th Cir.), cert. denied, 519 U.S. 1006

---

[4] The prior Magistrate Judge found that liberally construed, defendant Arranquin's behavior – watching the strip searches for her own amusement and to humiliate Plaintiff -- sufficed to state a Fourth Amendment claim at the pleading stage. (ECF No. 7 at 3:17-19.) However, this court finds that Plaintiff fails to state a claim against defendant Arranquin. Plaintiff fails to support his conclusory allegations about defendant Arranquin's motives with anything but his own conjecture. Moreover, subjective intent is irrelevant for the purposes of determining the reasonableness of the search under the Fourth Amendment, as long as the circumstances, viewed objectively, justify the action. Nunez, 591 F.3d at 1228.

(1996) (Easterbrook, C.J.) ("Unless female guards are shuffled off to back office jobs, itself problematic under Title VII, they are bound to see the male prisoners in states of undress. Frequently. Deliberately. Otherwise they are not doing their jobs . . . If only men can monitor showers, then female guards are less useful to the prison . . ."); see also Grummett, 779 F.2d at 495 ("restricted observations by members of the opposite sex [were not] so degrading as to require intervention by this court"); Michenfelder, 860 F.2d at 334 (female guards observing male prisoner body cavity searches from a control booth that provided limited view of the searches, and female guards sometimes conducting male prisoner shower duty, were reasonable because the female guards were "not routinely present for strip searches" and observation from video monitors "would provide at most an indistinct, limited view"); accord Byrd v. Maricopa Cty. Bd. of Supervisors, 845 F.3d 919, 922 (9th Cir. 2017).

Plaintiff also fails to state a claim that his constitutional rights were violated when defendant Rios submitted him to a strip search in front of five other officers. There is no allegation that any of these other officers were female, and there is no evidence in Plaintiff's allegations that this search violated the Fourth Amendment.

Based on the foregoing, the court finds that Plaintiff fails to state a cognizable Fourth Amendment claim against defendants Arraquin and Rios for observing him from the monitor during strip searches and when he was using the bathroom, or against defendant Rios for pulling Plaintiff out of a contact visit to conduct a strip search or conducting a strip search in front of other officers.

However, the court finds that Plaintiff states a cognizable Fourth Amendment claim against defendant C/O Rios for conducting excessive, vindictive, and harassing strip searches and fondling Plaintiff's genitals during a search.

**E.      Fourteenth Amendment Claims**

Plaintiff also claims a violation of his substantive due process rights under the Fourteenth Amendment. However, the concept of substantive due process is expanded only reluctantly and therefore, if a constitutional claim is covered by a specific constitutional provision, the claim must be analyzed under the standard appropriate to that specific provision,

not under the rubric of substantive due process.  County of Sacramento v. Lewis, 523 U.S. 833, 842, 118 S.Ct. 1708 (1998) (quotation marks and citation omitted).   Here, the Fourth Amendment protects Plaintiff from unreasonable searches and he may not pursue a separate substantive due process claim.  To the extent that Plaintiff also alleges a procedural due process claim, the Second Amended Complaint sets forth no facts supporting the existence of a viable claim premised on a violation of the procedural component of the Due Process Clause. Wilkinson v. Austin, 545 U.S. 209, 221, 125 S.Ct. 2384 (2005); Sandin v. Conner, 515 U.S. 472, 483-84, 115 S.Ct. 2293 (1995).

### F.   First Amendment Claim

Allegations of retaliation against a prisoner's First Amendment rights to speech or to petition the government may support a 1983 claim.  Rizzo v. Dawson, 778 F.2d 5527, 532 (9th Cir. 1985); see also Valandingham v. Bojorquez, 866 F.2d 1135 (9th Cir. 1989); Pratt v. Rowland, 65 F.3d 802, 807 (9th Cir. 1995).  "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal."  Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005); accord Watison v. Carter, 668 F.3d 1108, 1114-15 (9th Cir. 2012); Brodheim v. Cry, 584 F.3d 1262, 1269 (9th Cir. 2009).

An allegation of retaliation against a prisoner's First Amendment right to file a prison grievance is sufficient to support a claim under section 1983.  Bruce v. Ylst, 351 F.3d 1283, 1288 (9th Cir. 2003).  The Court must "'afford appropriate deference and flexibility' to prison officials in the evaluation of proffered legitimate penological reasons for conduct alleged to be retaliatory."  Pratt, 65 F.3d at 807 (9th Cir. 1995) (quoting Sandin, 515 U.S. at 482)).  The burden is on Plaintiff to demonstrate "that there were no legitimate correctional purposes motivating the actions he complains of."  Pratt, 65 F.3d at 808.

Plaintiff may be able to state a claim for retaliation.  Plaintiff has satisfied elements #(1), #(3), #(4), and #(5) to state a claim for retaliation, as listed above, but he has not satisfied

element #(2).   Plaintiff satisfies element #(1), because excessive strip searches, fondling, and transferring plaintiff are adverse actions against Plaintiff.   Plaintiff also satisfies element #(2), because he alleges that he filed staff complaints against defendant Rios, which is a protected activity. Element #(4), that defendant Rios' adverse actions would chill Plaintiff's exercise of his rights to file prison appeals, is also satisfied.   Finally, Plaintiff states that there was no penological purpose for the improper strip searches, satisfying element #(5).   However, Plaintiff fails to make sufficient factual allegations to show that defendant Rios acted *because* Plaintiff filed staff complaints.   To state a claim, Plaintiff must show a connection between the staff complaints and the improper searches by defendant Rios.   Plaintiff alleges that he had problems with Defendant Rios because Plaintiff filed staff complaints, and that the dates of the strip searches coincide with the dates Plaintiff filed the staff complaint.   These allegations are not sufficient without supporting facts, such as dates of staff complaints, who the staff complaints were against, dates of improper strip searches, who conducted the strip searches, and whether defendant Rios said or did anything indicating that he conducted the searches *because* Plaintiff filed staff complaints.   Plaintiff shall be granted leave to file a Third Amended Complaint curing the deficiencies in this claim found by the court.

## V.   CONCLUSION AND ORDER

The Court finds that Plaintiff's Second Amended Complaint fails to state a claim upon which relief may be granted.   The Court will dismiss the Second Amended Complaint and give Plaintiff leave to amend to file a Third Amended Complaint addressing the issues described above.

Under Rule 15(a) of the Federal Rules of Civil Procedure, "[t]he court should freely give leave to amend when justice so requires."   Accordingly, the Court will provide Plaintiff **one final opportunity** to file an amended complaint curing the deficiencies identified above.   Lopez v. Smith, 203 F.3d 1122, 1126-30 (9th Cir. 2000).   Plaintiff is granted leave to file the Third Amended Complaint within thirty days.

The Third Amended Complaint must allege constitutional violations under the law as discussed above.   Specifically, Plaintiff must state what each named defendant did that led to

the deprivation of his constitutional or other federal rights.  Fed. R. Civ. P. 8(a); Iqbal, 556 U.S. at 678; Jones, 297 F.3d at 934.  As discussed above, there is no *respondeat superior* liability, and each defendant is only liable for his or her own misconduct.  Iqbal, 556 U.S. at 676. Plaintiff must also demonstrate that each defendant *personally* participated in the deprivation of her rights by their actions.  Jones, 297 F.3d at 934 (emphasis added).

Plaintiff should note that although he has been given the opportunity to amend, it is not for the purpose of changing the nature of this suit or adding unrelated claims.  George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007) (no "buckshot" complaints).

Plaintiff is required to use the court's form complaint in preparing the Third Amended Complaint.  Plaintiff is also required to include a request for relief in the Third Amended Complaint, allege when and where the events at issue allegedly occurred, and sign the Third Amended Complaint under penalty of perjury.

Plaintiff is advised that an amended complaint supercedes the original complaint, Lacey v. Maricopa County, 693 F 3d. 896, 907 n.1 (9th Cir. 2012) (*en banc*), and it must be complete in itself without reference to the prior or superceded pleading, Local Rule 220.  Therefore, in an amended complaint, as in an original complaint, each claim and the involvement of each defendant must be sufficiently alleged.  The amended complaint should be clearly and boldly titled "Third Amended Complaint," refer to the appropriate case number, and be an original signed under penalty of perjury.

Based on the foregoing, it is **HEREBY ORDERED** that:

1. Plaintiff's Second Amended Complaint is  dismissed for the noted procedural deficiencies and, other than Plaintiff's claim for violation of his Fourth amendment rights against defendant Rios for excessive strip searches and fondling of his genitals, is dismissed for failure to state a claim, however Plaintiff will be granted leave to amend;

2. The Clerk's Office shall send Plaintiff a civil rights complaint form;

3. Plaintiff is granted leave to file a Third Amended Complaint curing the deficiencies identified by the Court in this order, within **thirty (30) days** from

13

the date of service of this order;

4.      Plaintiff is required to use the court's form complaint in preparing the Third Amended Complaint.  Plaintiff is also required to include a request for relief in the Third Amended Complaint, to allege when and where the events at issue occurred, and to sign the Third Amended Complaint under penalty of perjury;

5.      Plaintiff shall caption the amended complaint "Third Amended Complaint" and refer to the case number 1:14-cv-00906-AWI-GSA-PC; and

6.      If Plaintiff fails to file a Third Amended Complaint within 30 days, the court will recommend that this case be dismissed for failure to state a claim.

IT IS SO ORDERED.

Dated:   **March 6, 2017**                         **/s/ Gary S. Austin**
                                        UNITED STATES MAGISTRATE JUDGE

14